UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RANDY SOWELL, and D.D.S.S.,<br><br>                              Plaintiffs,<br><br>              -against-<br><br>NYSDOCCS ANTHONY J. ANNUCCI, et<br>al.,<br><br>                              Defendants. | 22-CV-6538 (LTS)<br><br>ORDER OF DISMISSAL |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Randy Sowell, who is currently incarcerated at the Vernon C. Bain Center

(VCBC) on Rikers Island, filed this *pro se* action under 42 U.S.C. § 1983, on behalf of himself

and his minor daughter, D.D.S.S. Plaintiff alleged that his multiple detentions pursuant to parole

warrants were unlawful. On January 13, 2023, the Court directed Plaintiff to amend his

complaint within 60 days, to address deficiencies in his pleadings.

Plaintiff filed an amended complaint on February 13, 2023, which the Court reviewed.

On June 22, 2023, the Court: (1) severed Plaintiff's unrelated claims from this action;

(2) transferred the claims arising in New Jersey to the United States District Court for the District

of New Jersey; (3) directed the Clerk of Court to open new actions for the remaining severed

claims; and (4) retained in this action only Plaintiff's claims relating to his parole, parole

revocation, and allegedly unlawful detentions pursuant to parole warrants, and the claims he

seeks to bring on behalf of D.D.S.S. For the following reasons, the Court dismisses Plaintiff's

remaining claims in this action, but grants him 60 days' leave to replead his claims in a second

amended complaint.

## BACKGROUND

The Court assumes familiarity with the underlying facts of this case as summarized in the Court's January 13, 2023, and June 22, 2023, orders. Plaintiff filed this action against correction and parole officials, alleging that he was unlawfully detained multiple times pursuant to parole warrants, including beyond his mandated released date. In the January 13, 2023, order, the Court determined that: (1) Plaintiff did not state an Eighth Amendment prolonged detention claim – that he was held beyond his mandated release date – because he had not provided specific facts about the dates of his incarceration, the date he should have been released, and the reasons he was entitled to be released; and (2) Plaintiff did not allege facts suggesting a false imprisonment claim, specifically, that parole or correction officials lacked probable or reasonable cause for his continued detention at Rikers Island. The Court granted Plaintiff 60 days' leave to amend his complaint to allege additional facts suggesting a valid claim of prolonged detention beyond his mandated release date or a valid claim of false imprisonment.

In the amended complaint, Plaintiff brings multiple unrelated claims stemming from his New Jersey arrest and his experiences in the custody of the New York City Department of Correction (DOC) and in the New York City shelter system from 2018 through 2022. In the June 22, 2023, order, the Court severed four sets of claims from this action: (1) Plaintiff's claims arising out of his New Jersey arrest and criminal proceedings against Eric Shenkus, Megan Donnovan, Kathrin S. Weigel, Emily Buonadonna, and the Cape May Courthouse; (2) Plaintiff's claims of allegedly unlawful conditions of confinement and retaliatory acts at DOC's facilities against Captain Kelly, Officer Guzman, Deputy Warden Harvey, Officer Caruso, Captain Smart, Deputy Warden Leiter, and DOC; (3) Plaintiff's claims that shelter staff and the New York City Department of Homeless Services (DHS) police allegedly violated his rights at various shelters against DHS; and (4) Plaintiff's claims arising out of the May 6, 2022, incident, and his May 19,

2022, arrest and resulting detention, against the New York City Police Department (NYPD) and the "Public Assistance Office 14th Street."

The court retained in this action only Plaintiff's claims relating to his parole, parole revocation, and allegedly unlawful detentions pursuant to parole warrants, and those claims he seeks to bring on behalf of D.D.S.S. The remaining defendants in this action are Anthony Annucci, the Acting Commissioner of the New York State Department of Corrections and Community Supervision (DOCCS); Cynthia Brann, the former Commissioner of the New York DOC;[1] Senior Parole Officer (S.P.O.) Hubert Brown; DOCCS; DOC; and the New York City Housing Authority Albany Houses.[2]

The following facts are asserted in the amended complaint with respect to Plaintiff's remaining claims concerning his parole, parole revocation, and detentions, and his claims on behalf of D.D.S.S. Following his extradition from New Jersey in September 2019, Plaintiff was "illegally confined" at a Rikers Island facility for about 90 days due to the parole violation charges, but was released via a writ of *habeas corpus* issued by the New York Supreme Court, Bronx County. (ECF 8 ¶¶ 6-7.)[3] In December 2019, Plaintiff's parole was reinstated and he was released from DOC custody. He reported to DOCCS's "Queens Area II Parole Office," and

---

[1] The Court noted in the January 13, 2023, order that since January 1, 2022, Louis Molina is the DOC Commissioner, and that he would have been the Commissioner during some of the dates Plaintiff asserted that he was detained at a Rikers Island facility, such as the VCBC. (ECF 6, at 3.)

[2] Because Plaintiff appears to bring claims against DOC with respect to his parole and his conditions of confinement, the Court retained DOC as a defendant in this action, but also directed that the entity be named as a defendant in one of the new severed actions.

[3] The Court quotes from the amended complaint verbatim. Unless otherwise indicated, all grammar, spelling, punctuation, and emphasis are as in the original.

informed P.O. Simeon[4] and S.P.O. Brown of the New Jersey warrant, but they told him not to

worry about it because, pursuant to the conditions of his parole, he could not leave the New York

City area. P.O. Simeon also "forced" Plaintiff to reside at the Bellevue Men's Shelter, where he

had various issues with the shelter's staff and DHS Police. (*Id.* ¶ 13.)

In March 2020, the NYPD arrested Plaintiff for possession of marijuana and synthetic

cannabinoids, which prevented him from reporting to his parole officer. In August 2020, Plaintiff

was again arrested, this time for an assault involving Jonathan Luna at a shelter and because a

parole warrant had been issued for his arrest.[5] Although Plaintiff should have been released from

DOC custody on December 24, 2020, he was "maliciously held on a New Jersey [b]ench

[w]arrant by Deputy Warden Harvey, at the direction of Captain Kelly and Officer Guzman," and

remained detained in a Rikers Island facility until January 25, 2021, "in retaliation [for] a

previous complaint filed in this same court."[6] (*Id.* ¶ 17.)

Following Plaintiff's release from DOC custody in January 2021, he was forced to

participate in an "illegal [e]xtradition" hearing at the New York Supreme Court, Queens County.

---

[4] In the original complaint, Plaintiff identified his parole officer as Stephanie Simon and he named her as a defendant. He now indicates that her last name is Simeon, but he does not name her as a defendant in the amended complaint.

[5] In the original complaint, Plaintiff seemingly asserted that the incident involving Luna occurred on Rikers Island. He now makes it clear that the incident with Luna occurred at Blake House, a shelter operated by the Salvation Army, in 2020, and that he was arrested for assault on Luna. Plaintiff also alleges that the New York Supreme Court, New York County, issued an order of protection to Luna with respect to Plaintiff. (ECF 8, ¶ 23.)

[6] Plaintiff repeatedly refers to a prior action that he filed in this court. A review of the court's records reveals that in 2020, Plaintiff filed an action under 42 U.S.C. § 1983 in which he asserted claims of excessive force, failure to protect, unconstitutional conditions of confinement, and due process violations against Captains Kelly and Moreno, Correction Officer Guzman, and Deputy Warden Mitchel. *See Sowell v. Kelly*, ECF 1:20-CV-11049, 2 (S.D.N.Y. Feb. 8, 2021). On February 8, 2021, that action was dismissed because Plaintiff did not file an updated prisoner authorization or pay the fees to bring that action. *See id.*, ECF 6.

(*Id*. ¶ 19.) Plaintiff later reported to the Queens Area II Parole Office, but parole officials did not give him permission to go to New Jersey to take care of the pending Cape May criminal matter.

On July 27, 2021, Plaintiff was arrested and detained because a parole violation warrant had been issued for his arrest, and he was "held past the statutory guidelines required for parole hearings." (*Id*. ¶ 24.) On February 16, 2022, following another arrest by the NYPD in Brooklyn, Plaintiff was again detained at a Rikers Island facility, where correction officers violated his rights. Although Plaintiff was scheduled to be discharged from parole in March 2022, his parole was revoked. Plaintiff contends that he should have been discharged from parole under the Less is More Act. He was later released from incarceration but still subject to parole conditions.

After Plaintiff was released from incarceration, he did not report to his parole officer because he believed he had completed parole, was suffering from mental health issues, and feared that he would be arrested for a parole violation based on the New Jersey fugitive warrant being issued for his arrest. On May 19, 2022, the NYPD arrested Plaintiff for criminal mischief and trespassing arising from an incident that occurred on May 6, 2022, at the Public Assistance Office on 14th Street in Manhattan.

In June 2022, Plaintiff's attorney in his criminal matter, Elizabeth Hayden of the Legal Aid Society, filed a state court *habeas* petition, which was granted on June 15, 2022. DOCCS, however, refused to lift the parole warrant until August 2022.[7] Although Plaintiff's parole has been discharged, he remains incarcerated due to the charges arising from his May 19, 2022,

---

[7] Plaintiff does not provide any other information about his state-court *habeas* petition. It is unclear from his assertions whether the petition addressed a parole warrant that was issued following Plaintiff's February 16, 2022, arrest in Brooklyn, New York.

arrest.[8] The New Jersey criminal matter also remains pending and the State of New Jersey has lodged "an illegal Governor's warrant" against Plaintiff. (*Id.* ¶ 33.)

Plaintiff asserts that he has been separated from his daughter as a result of the alleged violations. He also claims that his daughter has been subjected to homelessness because of the New York City Housing Authority's failure to fix problems in her mother's apartment. Plaintiff seeks immediate release from custody, expungement of all criminal matters and convictions since his release from state prison in 2018, retroactive repeal of his post-release supervision, termination of the employment of all individuals involved in the alleged violations, and money damages.

## DISCUSSION

### A.   Claims on Behalf of D.D.S.S.

In the January 13, 2023, order, the Court dismissed all claims brought on behalf of D.D.S.S. Plaintiff again attempts to bring claims on her behalf, listing the attorney who is apparently representing her in an unspecified matter in state court. As the Court previously stated, because Plaintiff is not an attorney, he cannot bring claims on behalf of D.D.S.S. The fact that D.D.S.S. is represented by an attorney in another matter does not change this analysis. This Court can only hear D.D.S.S.'s claims if an attorney files those claims on her behalf in this court. The Court therefore dismisses without prejudice any claims that Plaintiff is asserting on behalf of D.D.S.S. The Court also dismisses from this action the New York City Housing Authority Albany Houses, the defendant associated with claims that Plaintiff brings on D.D.S.S.'s behalf

---

[8] According to public records maintained by the New York State Unified Court System, Plaintiff has a criminal case stemming from his May 19, 2022, arrest pending before the New York Supreme Court, New York County. *See People v. Sowell*, No. IND-73005-22 (Sup. Ct. N.Y. Cnty.); *People v. Sowell*, No. SCR-74841-22 (Sup. Ct. N.Y. Cnty.). Plaintiff had a scheduled court date on June 22, 2023.

concerning housing conditions that allegedly led to her being homeless. The Court construes the amended complaint as asserting claims only with respect to Plaintiff, including any damages he seeks on his own behalf for not being able to see his daughter.

## B.    Claims against Annucci and DOCCS

Plaintiff named Acting DOCCS Commissioner Annucci as a defendant in the original complaint, and in the January 13, 2023, order, the Court dismissed the claims against Annucci because Plaintiff did not allege any facts suggesting that Annucci was personally involved in the alleged violations. The Court also determined that, because it appeared that Plaintiff was bringing official-capacity claims against Annucci, his claims were barred under the Eleventh Amendment. Although the Court directed Plaintiff not to replead the official-capacity claims against Annucci, he again names Annucci as a defendant in the amended complaint, and now also brings claims against DOCCS.

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, second alteration in original). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (internal quotation marks and citation omitted). Thus, "[t]he Eleventh Amendment bars a damages action in federal court against . . . state . . . officials when acting in their official capacity unless the state has waived its sovereign immunity or Congress has abrogated it." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Sci.*, 804 F.3d 178, 193 (2d Cir. 2015). This immunity also shields States and their agencies from claims for money damages, injunctive relief, and retrospective declaratory relief.

*See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984).

Congress has not abrogated the States' immunity for claims under Section 1983. *See Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990). And the State of New York has not waived its immunity to suit in federal court. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

As an agency of the State of New York, DOCCS is an arm of the State, and therefore is protected by Eleventh Amendment immunity. The Eleventh Amendment also precludes Plaintiff's claims under Section 1983 for damages against Annucci, who is a New York State official, in his official capacity. *See, e.g.*, *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022) ("[T]he Eleventh Amendment bars the award of money damages against state officials in their official capacities.").[9]

The Court therefore dismisses Plaintiff's Section 1983 claims against DOCCS and his official-capacity claims against Annucci under the doctrine of Eleventh Amendment immunity, for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *Close v. New York*, 125 F.3d 31, 38-39 (2d Cir. 1997) ("[U]nless New York waived its immunity, the district court lacked subject matter jurisdiction." ); *Atl. Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) ("Although the parties do not address the Eleventh Amendment in their briefs, we raise it *sua*

_____

[9] A plaintiff can sue a state official in his or her official capacity, notwithstanding the Eleventh Amendment, if the plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Berman Enterprises, Inc. v. Jorling*, 3 F.3d 602, 606 (2d Cir. 1993) ("[A]cts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be the subject of injunctive or declaratory relief in federal court." (*citing Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985)). Here, Plaintiff does not allege facts suggesting that Annucci is committing an ongoing violation of federal law or that he is seeking prospective injunctive relief against him.

*sponte* because it affects our subject matter jurisdiction." ); *see* 28 U.S.C. § 1915(e)(2)(B)(iii). If Plaintiff names immune defendants in his second amended complaint, his claims against those defendants will be summarily dismissed.

Furthermore, even if Plaintiff's claims against Annucci were not barred under the Eleventh Amendment, he does not allege any facts showing that Annucci violated his federal constitutional rights. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted). "To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official. . . ." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020). Plaintiff does not allege any facts suggesting that Annucci was personally involved in the alleged violations of his rights.

## C.     Claims against Brann and DOC

Plaintiff also named former DOC Commissioner Brann as a defendant in the original complaint. In the January 13, 2023, order, the Court dismissed the claims against Brann because Plaintiff did not allege any facts suggesting that she was personally involved in the alleged violations. The Court also determined that Plaintiff's official-capacity claims against Brann may be construed as claims against the City of New York, *see, e.g.*, *Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir. 2005) ("A § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself."), but held that his claims against the City of New York were not viable because he failed to plead facts suggesting that the City of New York had implemented a policy or adopted a custom or practice that caused the alleged violations, *see Connick v. Thompson,* 63 U.S. 51, 60 (2011) (A municipality or other local government may be liable under Section 1983 "if the governmental body itself 'subjects' a

person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.")
(quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)). The
Court granted Plaintiff leave to plead a municipal liability claim against the City of New York in
the amended complaint. However, instead of bringing claims against the City of New York,
Plaintiff again names Brann as a defendant in the amended complaint, along with DOC.

For the same reasons stated in the January 13, 2023, order, Plaintiff's claims against
Brann are dismissed. He does not allege facts suggesting that she was personally involved in the
events leading to his parole revocation or the allegedly unlawful detentions pursuant to parole
warrants. *See Tangreti,*983 F.3d 6 at620 Nor does Plaintiff allege facts suggesting that he may
have viable official-capacity claims against Brann that should be construed as claims against the
City of New York. The amended complaint does not set forth facts suggesting that a municipal
policy, custom, or practice resulted in or contributed to a violation of Plaintiff's constitutional
rights.

Plaintiff's claims against DOC must also be dismissed because an agency of the City of
New York is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and
proceedings for the recovery of penalties for the violation of any law shall be brought in the
name of the city of New York and not in that of any agency, except where otherwise provided by
law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Emerson v. City
of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited
from suing a municipal agency."). The Court declines to construe the amended complaint as
asserting claims against the City of New York, because, as stated above and detailed below,
Plaintiff does not allege any facts suggesting that his allegedly unlawful detention pursuant to
parole warrants was caused by a municipal policy, custom, or practice.

**D.      Claims arising out of Plaintiff's Parole**

**1.      Challenge to Revocation of Parole**

In the original complaint, Plaintiff asserted that DOCCS had refused to discharge him

from parole under New York's Less is More Act,[10] holding him beyond his release date. In the

January 13, 2023, order, the Court considered whether Plaintiff was attempting to assert a

prolonged detention claim in violation of the Eighth Amendment. *See Hurd v. Fredenburgh*, 984

F.3d 1075, 1085 (2d Cir. 2021) ("There is no penological justification for incarceration beyond a

mandatory release date because 'any deterrent and retributive purposes served by [the inmate's]

time in jail were fulfilled as of that date.'" (quoting *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d

Cir. 1989))). The Court concluded that Plaintiff had not alleged facts sufficient to state a claim

that he was held beyond his mandated release date, or that any defendant acted with a sufficiently

culpable state of mind. Because an over-detention, under Second Circuit law, "qualifies as a

harm of constitutional magnitude" in violation of the Eighth Amendment, *see Hurd*, 984 F.3d at

1085, the Court granted Plaintiff leave to amend this claim to provide more facts indicating that

he was subjected to additional days of detention when he was entitled to immediate release under

New York law.

Plaintiff now asserts in the amended complaint that, prior to his March 2022, projected

release date from parole, his parole was revoked and he was later restored to parole. (ECF 8

¶ 30.) As his parole revocation was the apparent cause for Plaintiff's detention beyond March

---

[10] New York's Less Is More Act, which was signed into law in September 2021, "restrict[s] the use of incarceration for non-criminal technical parole violations, bolster[s] due process in parole hearings, require[s] parole hearings to take place within a specified time, and provide[s] earned time credit for parole." Senate Bill S1144A, 2021-2022 New York State Legislative Session (2021), https://www.nysenate.gov/legislation/bills/2021/S1144. The Act went into effect in March 2022.

2022, his assertion that he was held beyond his mandated release date may be construed as a

challenge to his parole revocation. Such a challenge cannot proceed in a Section 1983 action.

The Supreme Court of the United States has determined:

> that a state prisoner's § 1983 action is barred (absent prior invalidation [of
> confinement on which the section 1983 claim is based]) – no matter the relief
> sought (damages or equitable relief), no matter the target of the prisoner's suit
> (state conduct leading to conviction or internal prison proceedings) – if success in
> that action would necessarily demonstrate the invalidity of confinement or its
> duration.

*Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original); *Heck v. Humphrey*, 512

U.S. 477, 486-87 (1994) ("[I]n order to recover damages for [an] allegedly unconstitutional

conviction or imprisonment, or for other harm caused by actions whose unlawfulness would

render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or

sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a

state tribunal authorized to make such determination, or called into question by a federal court's

issuance of a writ of habeas corpus[.]") (footnote omitted). This rule, originally articulated by the

Supreme Court in *Heck*, has been extended to Section 1983 actions that challenge the fact or

duration of confinement based on a parole revocation. *See Lee v. Donnaruma*, 63 F. App'x 39,

40-41 (2d Cir. 2003) (summary order); *McClinton v. Henderson*, No. 13-CV-3335, 2014 WL

2048389, at *5 (E.D.N.Y. May 19, 2014).

Here, Plaintiff's Section 1983 claim that he was held beyond his projected release date

from parole would necessarily imply the invalidity of his parole revocation and resulting

confinement. Plaintiff does not allege that any court, state or federal, reversed, expunged,

declared invalid, or called into question his parole revocation. His claims for damages are

therefore barred by *Heck* insofar as they challenge the validity of his parole revocation. *See*

*Davis v. Cotov*, 214 F. Supp. 2d 310, 316 (E.D.N.Y. 2002) (holding that a plaintiff's suit was

barred by *Heck* where plaintiff "remained incarcerated[,]" his claims "challenged the validity of the parole revocation procedures," and he had not shown that the revocation had been "reversed, expunged, or declared invalid").

Furthermore, to the extent Plaintiff brings claims against S.P.O. Brown, the sole remaining defendant, for any involvement he may have had with respect to Plaintiff's parole revocation, the claims must be dismissed. Parole officers have absolute immunity for "judicial acts" and "acts that are prosecutorial in nature." *Scotto v. Almenas*, 143 F.3d 105, 110 (2d Cir. 1998). They therefore receive absolute immunity for their decisions to "grant, deny, or revoke parole," which are judicial tasks, as well as for their actions in "initiating parole revocation proceedings" and "presenting the case for revocation to hearing officers," which are prosecutorial acts. *Id.* at 111-12. S.P.O. Brown, or any other unnamed parole official, is thus entitled to absolute immunity for any actions he took with respect to Plaintiff's parole revocation.

The Court notes, however, that Plaintiff alleges in the amended complaint that his attorney "posted his bail on all criminal cases in New York in order to file a Parole Writ of Habeas Corpus which was granted on or about June 15, 2022," but that DOCCS "refused to lift his parole warrant until on or about August 2022." (ECF 8 ¶ 33.) Plaintiff does not identify the grounds on which he sought *habeas* relief and on what basis it was granted. A state court's grant of a *habeas* petition vacating the revocation judgment would meet *Heck's* "favorable termination" requirement. *Heck*, 512 U.S. at 477. If Plaintiff obtained a ruling or declaration of invalidity of his parole revocation before filing his initial complaint in this case, he may submit a second amended complaint asserting a claim that he was held beyond his mandated release date on that basis. Plaintiff must clearly indicate in the second amended complaint that the state court

granted his *habeas* petition or otherwise overturned the parole revocation decision and should
provide a copy of the decision, or identify the case title, date, and court by which it was issued, if
possible.[11]

### 2.    False Imprisonment

In the original complaint, Plaintiff alleged that he was subjected to multiple parole
warrants, and was repeatedly detained in the custody of DOC. He also asserted that New Jersey
lodged a warrant for his arrest. In the January 13, 2023, order, the Court considered whether
Plaintiff's assertions implicated a false imprisonment claim, but determined that Plaintiff had not
alleged facts suggesting that parole officials lacked probable or reasonable cause to issue the
parole warrants that resulted in his detentions at Rikers Island. Further, because Plaintiff alleged
no facts suggesting that the parole warrants were facially invalid, he failed to state a claim for
false imprisonment for his resulting detentions based on those warrants. The Court, however,
granted Plaintiff leave to amend his complaint to allege facts suggesting that there was no
reasonable basis to detain him during specified periods of time based on either the parole
warrants or the New Jersey warrant. The Court also directed Plaintiff to allege how parole or
correction personnel were personally involved in any alleged violations.

In the amended complaint, Plaintiff continues to seek damages flowing from his
detentions pursuant to the parole warrants. He describes four arrests involving parole warrants:
(1) in 2018, after he absconded, the New York State Division of Parole issued a warrant resulting
in Plaintiff's extradition from New Jersey in September 2019 and detention on Rikers Island

---

[11] Plaintiff should note that because, it appears that he is no longer on parole, his claims
for declaratory or injunctive relief with respect to his last parole detention are moot. *See
Robinson v. New York*, 550 F. App'x 63, 64 (2d Cir. 2014) (plaintiff's claims for injunctive and
declaratory relief moot after term of supervised release terminated).

until he was released from custody in December 2019; (2) in August 2020, he was arrested on a

parole warrant and for assault, and he alleges that he should have been released on December 24,

2020, but was held until January 25, 2021, because of the New Jersey warrant and Deputy

Warden Harvey's actions; (3) on July 27, 2021, he was arrested and held on a parole warrant

"past the statutory guidelines required for parole hearings," and was later released on an

unspecified date (ECF 8 ¶ 24); and (4) on February 16, 2022, he was arrested in Brooklyn, his

parole was later revoked on an unspecified date, and he was released in March 2022, with his

parole reinstated.

To state a false imprisonment claim, a plaintiff must allege facts showing that: "(1) the

defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement,

(3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise

privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). "[I]t is well established

under New York law and elsewhere that imprisonment pursuant to a regularly issued warrant –

that is, a warrant that is proper at the time it was issued, notwithstanding subsequent events or

disclosures – not only defeats suppression in the criminal context, but also may constitute a

privileged detention sufficient to defeat a civil action for false imprisonment." *Uviles v. City of

New York*, ___F. Supp. 3d ___, 2023 WL 3266838, at *13 (E.D.N.Y. May 5, 2023) (citations

omitted). Thus, a parolee's arrest and confinement based on a parole warrant supported by

reasonable cause is privileged even if the parole warrant is later declared invalid. *See Albergottie

v. New York City*, No. 08-CV-8331, 2011 WL 519296, at *8 (S.D.N.Y. Feb. 15, 2011); *see

generally Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007) (holding that an arrest pursuant to

a warrant is presumed to be reasonable under the Fourth Amendment). "It is settled that such a

privileged confinement will not give rise to an action against the entity that detained plaintiff." *Dupree v. City of New York*, 418 F. Supp. 2d 555 (S.D.N.Y. 2006).

> ### a. *September 2019, August 2020, and February 16, 2022, Arrests*

Plaintiff does not allege that any of the parole warrants issued with respect to his September 2019, August 2020, and February 16, 2022, arrests were facially invalid or did not comply with parole regulations under N.Y. Exec. § 259–i(3)(A)(i). Plaintiff's factual allegations indicate that Plaintiff's arrest in September 2019, for absconding, and his August 2020 and February 16, 2022, arrests by the NYPD were sufficient bases for parole officials to have reasonable cause to believe he had committed a crime or violated the terms of his parole. *See Albergottie*, 2011 WL 519296, at *8 (a parolee's arrest for forgery "is more than sufficient to establish reasonable cause for a parole warrant"). Thus, these arrests were sufficient to establish reasonable cause for a parole warrant, and without any allegations that the warrants were facially invalid or lacking in reasonable cause, Plaintiff's detentions on the parole warrants were privileged and he fails to state a plausible claim for false imprisonment on any of the detentions he describes after these three arrests. *See Rodriguez v. City of New York*, __ F.Supp. 3d ___, 2022 WL 3587598, at *21 (S.D.N.Y. Aug. 22, 2022) ("Where a plaintiff 'was lawfully detained pursuant to a facially valid warrant issued by the New York State Division of Parole,' such detention is 'a privileged confinement [and] will not give rise to an action against the entity that detained plaintiff.'" (quoting *Dupree v. Pough*, 454 F. Supp. 2d 166, 170 (S.D.N.Y. 2006))).

> ### b. *July 27, 2021, Arrest*

Plaintiff's allegation that, after his July 27, 2021, arrest, he was held "past the statutory guidelines required for parole hearings" (ECF 8 ¶ 24), could suggest that he was detained without due process in violation of the Fourteenth Amendment. The Court therefore considers whether this allegation may suggest a basis for a false imprisonment claim.

The revocation of parole implicates deprivation of a protectable liberty interest, which requires due process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others . . . . [T]he liberty is valuable and must be seen as within the protection of the Fourteenth Amendment."). A parolee is entitled to a preliminary hearing that must be conducted "at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest." *Morrissey*, 408 U.S. at 485. "The parolee should be given notice that the [preliminary] hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged." *Id.* at 487. "There must also be an opportunity for a [final parole revocation] hearing" conducted "within a reasonable time after the parolee is taken into custody."[12] *Id.* at 488.

Under New York law, a parolee arrested pursuant to a parole warrant and held pending parole revocation proceedings is entitled to a preliminary hearing within 15 days of his arrest, *see* N.Y. Exec. Law § 259i(3)(c)(i), and to a final parole revocation hearing within 90 days of the

---

[12] In *Morrissey*, the Supreme Court also articulated minimum requirements of due process for the final hearing process, which include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body . . . and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey*, 408 U.S. at 489; *accord Calhoun v. N.Y. Div. of Parole Officers*, 999 F.2d 647, 652 (2d Cir. 1993) ("Where a state provides a system of parole, it may not revoke a person's parole without providing minimum due process protections.").

probable cause determination, *see id.* § 259–i(3)(f)(i). This does not mean, however, that the failure to hold a preliminary hearing within 15 days necessarily violates due process. *See Uviles*, 2023 WL 3266838, at *14 ("[V]iolation of the 15-day requirement in Exec. Law § 259-i does not automatically render the warrant void for purposes of a § 1983 claim, nor does it automatically give rise to a false imprisonment action."); *Bell v. Center*, No. 09-CV-7218, 2010 WL 2000526, at *7 (S.D.N.Y. May 18, 2010) ("The Supreme Court has held only that a parolee has a due process right to a preliminary hearing held 'as promptly as convenient' after the execution of the warrant. *Morrissey*, 408 U.S. at 485. The Supreme Court has not specified what length of time would violate due process."). *But see McDay v. Travis*, 303 F. App'x 928, 929 (2d Cir. 2008) (indicating that in some circumstances, "[i]f these requirements are not timely met, the parole warrant is rendered void, and the prisoner is entitled to be released" (relying on *Levy v. Dalsheim*, 48 N.Y.2d 1019 (1980))). Courts have "consistently indicated that a delay of any more than thirty days for [a preliminary] hearing is constitutionally insufficient under *Morrissey*." *Davis v. New York State Div. of Parole*, No. 07-CV-5544, 2008 WL 3891524, at *8 (S.D.N.Y. Aug. 20, 2008) (collecting cases).

Here, Plaintiff's assertion that he was held beyond the statutory guidelines required for parole hearings after his July 27, 2021, arrest suggests a challenge to the timing of his hearings. He does not provide, however, any facts concerning the process he received after his arrest for his parole revocation proceedings, or which requirement, if any, was not met. Plaintiff does not claim that he did not receive a preliminary hearing either within the 15-day period provided or as promptly as convenient, but within 30 days. *See Davis*, 2008 WL 3891524, at *8. Nor does he allege any facts suggesting that his revocation hearing was not held within 90 days of the probable cause hearing. As with his other arrests, it appears that Plaintiff was lawfully detained

after his July 27, 2021, arrest pursuant to a facially valid warrant. His assertion that he was held beyond the statutory guidelines required for parole hearings for that arrest is not, by itself, sufficient to establish a false imprisonment claim. If Plaintiff is asserting that the parole officials violated the 15-day period to hold his preliminary hearing, that alone does not void the warrant for his detention or give rise to a false imprisonment claim. *See Uviles*, 2023 WL 3266838, at *14. The Court finds that Plaintiff fails to state a false imprisonment claim upon which relief may be granted with respect to his July 27, 2021, detention on a parole warrant.

The Court, however, grants Plaintiff leave to replead his false imprisonment claim arising from his July 27, 2021, arrest. Plaintiff must explain his assertion that he was held beyond the statutory guidelines required for parole hearings. He must state when he received a preliminary hearing and whether the preliminary hearing was held beyond the prescribed 15-day period. Plaintiff must also inform the Court when his revocation hearing was held and whether the revocation proceeding was held within 90 days of the probable cause hearing. Plaintiff must also name as defendants the individuals who were responsible for any alleged delay in his parole revocation proceedings.

### c.  *New Jersey Warrant*

Plaintiff also fails to state a viable false imprisonment claim based on the New Jersey warrant. He does not allege that the New Jersey warrant was at any time the sole basis for his detention, nor does he allege facts suggesting that the warrant was facially invalid, such that his detention pursuant to the warrant would constitute confinement without probable or reasonable cause.

### 3.    Restriction on Out-of-State Travel

Throughout the amended complaint, Plaintiff repeatedly refers to his New Jersey criminal case and seeks to hold parole officials liable for not giving him permission to go to New Jersey

to resolve the matter. He asserts that both S.P.O. Brown and P.O. Simeon told him not to worry about proceedings in New Jersey, because his parole conditions restricted him from leaving New York State.[13] Plaintiff does not say whether he requested and was denied permission to attend his criminal proceedings in New Jersey, but he appears to challenge the failure to give him permission and he seeks damages.

A parolee does not enjoy "the absolute liberty to which every citizen is entitled, but only [a] conditional liberty properly dependent on observance of special parole restrictions." *Morrissey*, 408 U.S. at 480. Thus, he may be subjected "to many restrictions not applicable to other citizens," *id*. at 482, and his liberty interests are not infringed "in the absence of a showing that the [parole] board or its agents acted in an arbitrary and capricious manner," *Robinson v. Pagan*, No. 05-CV-1840, 2006 WL 3626930, at *1 (S.D.N.Y. Dec. 12, 2006); *see Muhammad v. Evans*, No. 11-CV-2113, 2014 WL 4232496, at *9 (S.D.N.Y. Aug. 15, 2014) ("In the Second Circuit, special restrictions on a parolee's rights are upheld where they are reasonably and necessarily related to the interests that the Government retains after his conditional release.") (internal quotation marks and citations omitted). Review of conditions of parole is generally a matter for state courts. *Nash v. King*, No. 13-CV-00753, 2015 WL 1461291, at *3 (W.D.N.Y. Mar. 30, 2015); *Pena v. Travis*, No. 01-CV-8534, 2002 WL 31886175, at *13 (S.D.N.Y. 2002).

Limitations on a parolee's freedom of travel may be imposed without violating the parolee's constitutional rights. *See Watson v. Cieslak*, No. 09-CV-2073, 2010 WL 93163, at *5 (S.D.N.Y. Jan. 11, 2010) (finding that "it is entirely appropriate that New York parole agreements" restrict travel); *Rizzo v. Terenzi*, 619 F. Supp. 1186, 1189 (E.D.N.Y. 1985) (finding

---

[13] In New York, a parolee must comply with a set of standard release conditions, *see* 9 N.Y.C.R.R. § 8003.2, which include not traveling outside the state without the permission of his parole officer, *id*. § 8003.2(2).

no constitutional violation where parolee was denied the right to travel as a condition of his parole). Such restrictions may assist in monitoring a parolee's activities and, therefore, serve a valid penological interest. *Trivsan v. Annucci*, No. 14-CV-6016, 2019 WL 2304647, at *5 (E.D.N.Y. May 30, 2019).

Plaintiff has no protected liberty interest in being free from the special conditions of his parole, such as traveling out of state. Nor has he alleged any facts to suggest that the restriction on out-of-state travel as part of his conditions of parole was arbitrary and capricious and thus subject to review in this court. To the extent Plaintiff seeks to hold S.P.O. Brown or some other unnamed official for this claim, he fails to allege facts suggesting that his constitutional rights were violated. Accordingly, Plaintiff's claim, that he was not allowed to go to New Jersey to resolve the criminal matter there, must be dismissed for failure to state a claim on which relief may be granted.

### 4.    Residence at Shelter Requirement

Plaintiff also seeks damages against parole officials for the various wrongs he allegedly suffered in the New York City shelter system. Plaintiff's assertion that parole officials required him to stay at the Bellevue Men's Shelter after he was released from DOC custody in December 2019, may be construed as a due process claim under the Fourteenth Amendment.

"[T]he Due Process Clauses generally confer no affirmative right to governmental aid." *DeShaney v. Winnebago Cty. Dep't of Soc. Serv.*, 489 U.S. 189, 196 (1989). There are two exceptions to the applicable general principle: the "special relationship" exception and the "state created danger" exception. *See Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008). Only the "special relationship" exception is relevant here.

As the Supreme Court recognized in *DeShaney*, the state has an affirmative duty with respect to an individual "when the State by the affirmative exercise of its power so restrains an

individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs." *DeShaney*, 489 U.S. at 200. "[I]nvoluntary custody" is the "linchpin of any special relationship." *Matican*, 524 F.3d at 156. Courts in the Second Circuit have held that a parolee is in the state's "legal custody," but "because the limitations imposed by the state [on a parolee] are minimal, so too are the duties it assumes." *Jacobs v. Ramirez*, 400 F.3d 105, 105–07 (2d Cir. 2005) (imposing a duty of care on the state not to require a parolee to remain in a place that is inhabitable).

Here, the Court construes Plaintiff's claim to be that the parole officers owed him a limited, affirmative duty under the Due Process Clause, which was violated when P.O. Simeon "forced" him to reside at Bellevue Men's Shelter where he was subjected to allegedly unlawful actions or an unsafe environment. (ECF 8 ¶ 13.) "[T]o succeed on a Fourteenth Amendment claim under the special relationship exception, a plaintiff must show that the [defendant's] behavior was so egregious, so outrageous, that it may fairly be said to shock the conscience." *Davis v. McCleary*, 2017 WL 2266856, at *4 (E.D.N.Y. May 23, 2017) (quoting *Matican*, 524 F.3d at 155) (internal quotation marks and citation omitted); *see also Ciccone v. Ryan*, No. 14-CV-1325, 2015 WL 4739981, at *5 (S.D.N.Y. Aug. 7, 2015). "To guide courts as to what conduct may be conscience-shocking, the Supreme Court has explained that 'negligently inflicted harm is categorically beneath the threshold of constitutional due process,' while 'conduct intended to injure in some way[,] unjustifiable by any government interest[,] is the sort of official action most likely to rise to the conscience-shocking level.'" *Stovall v. Wilkins*, No. 15-CV-2163, 2016 WL 5478509, at *4 (S.D.N.Y. Sept. 29, 2016) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).

Plaintiff does not allege any facts suggesting that P.O. Simeon's actions, or that of any other officials, were reckless or "shock[ed] the conscience." At most, Plaintiff's allegations suggest that P.O. Simeon and any other parole officials involved acted negligently in sending Plaintiff to Bellevue Men's Shelter. However, negligence is not sufficient to sustain a due process claim under the Fourteenth Amendment.

## E.   Challenge to Present Confinement

To the extent Plaintiff seeks immediate release from his present detention, he may not obtain release from custody through a Section 1983 action; instead, he can only obtain such relief by bringing a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254 or § 2241. *See Wilkinson v. Dotson*, 544 U.S. 74, 78-82 (2005) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973) (noting that writ of *habeas corpus* is sole remedy for prisoner seeking to challenge the fact or duration of his confinement)); *Clemente v. Conn.*, No. 3:21-CV-0408, 2022 WL 527757, at *1 (D. Conn. Jan. 27, 2022) (A *habeas* petition under Section 2241 is the appropriate vehicle for a pretrial detainee to seek release from custody). A state prisoner may not circumvent the exhaustion requirement for *habeas corpus* relief by requesting release from custody in a civil action. *Preiser*, 411 U.S. at 489-90. Should Plaintiff wish to seek release from his present custody, he may file a petition for a writ of *habeas corpus* once he has exhausted all of his available state-court remedies.

## F.   State Law Claims

Plaintiff's assertions may implicate claims under state law. Under 28 U.S.C. § 1367(c)(3), a federal district court is authorized to decline to exercise supplemental jurisdiction of state law claims once it has dismissed all of the federal claims of which it had original jurisdiction. *See, e.g., Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("Generally, when the federal-law claims have dropped out of the lawsuit in its early stages and

only state-law claims remain, the federal court should decline the exercise of jurisdiction.").
Having dismissed the federal claims of which the court has original jurisdiction, the Court
declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be
asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)
("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by
enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of
Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

**G.     Leave to Replead**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts
generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its
defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir.
2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because it is unclear whether
Plaintiff may be able to allege additional facts to state a plausible claim for relief, the Court
grants Plaintiff 60 days' leave file a second amended complaint. Plaintiff is only granted leave to
detail two specific false imprisonment claims in the second amended complaint: (1) that he was
held beyond his mandated release date although he had obtained a state-court ruling or
declaration of invalidity of his parole revocation before filing his original complaint in this
action; and (2) that he was deprived of due process because his preliminary hearing or parole
revocation proceedings after his July 27, 2021, arrest were not timely held. If Plaintiff chooses to
amend the due process claim relating to the July 27, 2021, arrest, he should specifically allege
the length of time between his arrest and his preliminary hearing and/or parole revocation
proceedings. This leave to replead is limited to only those two claims.

In the "Statement of Claim" section of the second amended complaint form, Plaintiff
must provide a short and plain statement of the relevant facts supporting his inadequate medical

care claims. Plaintiff should include all of the information in the second amended complaint that Plaintiff wants the Court to consider in deciding whether the second amended complaint states a claim for relief. That information should include:

   a)  the names and titles of all relevant people;

   b)  a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

   c)  a description of the injuries Plaintiff suffered; and

   d)  the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's second amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's second amended complaint will completely replace, not supplement, the amended complaint, any facts or claims that Plaintiff wants to include from the amended complaint must be repeated in the second amended complaint.

## CONCLUSION

The Court dismisses this action for failure to state a claim, seeking monetary relief from defendants that are immune from such relief, and for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii); Fed. R. Civ. P. 12(h)(3). All other pending matters in this case are terminated.

The Court grants Plaintiff 60 days' leave to replead two of his false imprisonment claims in a second amended complaint. Plaintiff must submit the second amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as a

"Second Amended Complaint," and label the document with docket number 22-CV-6538 (LTS). A Second Amended Civil Rights Complaint form is attached to this order.

If Plaintiff fails to file a second amended complaint within the prescribed time and he cannot show good cause for such failure, the Court will enter judgment dismissing the action for failure to state a claim on which relief many be granted, 28 U.S.C. § 1915(e)(2)(B)(ii), and declining to exercise supplemental jurisdiction of any state law claims Plaintiff may be asserting, 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   June 26, 2023
         New York, New York

                                              /s/ Laura Taylor Swain
                                              LAURA TAYLOR SWAIN
                                         Chief United States District Judge

26

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____

(Include case number if one has been assigned)

### COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

Rev. 5/20/16

## I.     LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name              Middle Initial              Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                          State                     Zip Code

## III.   PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

Page 2

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                  Zip Code

Defendant 2:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                  Zip Code

Defendant 3:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                  Zip Code

Defendant 4:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                  Zip Code

## V.     STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.


Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.


| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |


Date on which I am delivering this complaint to prison authorities for mailing: _____